UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
MARINE STEEL TRANSPORT LINE, LLC, THORNTON TRANSPORTATION & TOWING, LLC,

                Plaintiffs,

   -against-

EASTERN METAL RECYLING, LLC, CAMDEN IRON & METAL, INC., T&T SCRAP, LLC, SAL'S METAL CORP.,

                Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 19-CV-2275-FB-SJB

*Appearances:*

| | |
|---|---|
| *For the Plaintiffs:*<br>DERRICK STORMS<br>Solomos & Storms, PLLC<br>33-08 Broadway<br>Astoria, New York 11106 | *For Defendants Eastern Metal Recycling, LLC, and Camden Iron & Metal, Inc.:*<br>FRANK P. DEGIULIO<br>Palmer Biezup & Henderson, LLP<br>140 Broadway, 46th Floor<br>New York, New York 10005 |

**BLOCK, Senior District Judge:**

     In this admiralty action, Marine Steel Transport Line, LLC, and Thornton Transportation & Towing, LLC (collectively, "Thornton") claim that three barges they owned were damaged while being used by Eastern Metal Recycling, LLC, and Camden Iron & Metal, Inc. (collectively, "EMR") to transport scrap metal.

1

Their amended complaint asserts claims for (1) breach of contract and the implied covenant of good faith and fair dealing, (2) fraud in the inducement, and (3) negligence/gross negligence.[1]

Pursuant to Federal Rule of Civil Procedure 56, EMR moves for summary judgment on Thornton's claims for fraud in the inducement and negligence/gross negligence. EMR does not seek an outright summary judgment on Thornton's claim for breach of contract because it is undisputed that EMR agreed to pay for "debris removal and steel repairs other than those considered to be normal wear and tear." Am. Compl., Ex. 5. Instead, it argues that the claim raises three issues of law that should be resolved in its favor.

For the following reasons, the Court concludes that EMR is entitled to summary judgment on Thornton's claims for fraud in the inducement and negligence/gross negligence. With respect to Thornton's claim for breach of contract, the Court concludes that the issues raised by EMR's motion present questions of fact that cannot be resolved as a matter of law.

1. **Fraud in the Inducement**

EMR argues that Thornton's claim for fraud in the inducement is duplicative

---

[1] Thornton also sued T&T Scrap, LLC, and Sal's Metal Corp., two entities that supplied scrap metal to EMR and actually loaded it onto the barges, for negligence/gross negligence. Those claims have been settled.

of its breach of contract claim. That is correct. While a party may be liable in tort for fraudulently inducing another to enter into a contract, the cause of action requires a misrepresentation of fact collateral to the contract—a lie "as to one's current financial condition, present ability to perform, and the like." *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017). It cannot be based on a failure to perform future acts. *See Manhattan Film, Inc. v. Ent. Guarantees, Ltd.*, 548 N.Y.S.2d 200, 201 (1st Dep't 1989). In particular, "[a] cause of action for breach of contract cannot be converted into one for fraud by merely alleging that defendant did not intend to fulfill the contract." *Rochelle Assocs. v. Fleet Bank of New York*, 645 N.Y.S.2d 798, 800 (1st Dep't 1996).

Thornton's claim for fraudulent inducement is based solely on allegedly "false and fraudulent statements concerning [EMR's] promise to repair." Am. Compl. ¶ 60. Therefore, its remedy is limited to damages for breach of contract. *See Manhattan Film, Inc.*, 548 N.Y.S.2d at 201 ("[A]n allegation of fraud relating only to a breach of contract must be enforced by an action on the contract.").

**2.  Negligence/Gross Negligence**

In addition to the cost of repairs, Thornton seeks to recover the profits it lost as a result of being unable to use the damaged barges for other jobs. While such consequential damages are generally available in tort cases, they are "not

3

recoverable in an action to recover damages for breach of contract in the absence of the plaintiff's showing that such damages were foreseeable and within the contemplation of the parties at the time the contract was made." *Martin v. Metro. Prop. & Cas. Ins. Co.*, 656 N.Y.S.2d 318, 318-19 (2d Dep't 1997). To protect this aspect of contract law, courts have developed the rule that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389 (1987). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.* Federal maritime law incorporates the same rule. *See Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1284 (2d Cir. 1994) ("[A]ny duty owed by [the shipper] to [the cargo owner] must be derived from the contract and . . . the negligent misrepresentation claim, which sounds in tort and entails a duty independent of the contract, should have been dismissed.").

It is clear that Thornton's and EMR's duties to each other arose out of their contractual relationship. Therefore, Thornton cannot recover on a theory of negligence or gross negligence. Whether or not Thornton's alleged lost profits were "foreseeable and within the contemplation of the parties," *Martin*, 656

4

N.Y.S.2d at 319, is a question of fact. *See Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) ("Foreseeability [of contract damages] is a question of fact reviewed for clear error.").

**3.    Breach of Contract: Thornton's Knowledge of Damage**

The unpowered barges were towed by a tugboat owned by Thornton and operated by one of its employees. The tugboat captain frequently saw the barges being damaged during loading operations. Thornton's president and vice president also observed the damage when the barges returned from a trip.

EMR argues that Thornton's failure to take corrective action in the face of this knowledge precludes recovery. It cites several admiralty cases for the proposition that the owner of a barge has a duty "to use reasonable case to protect the barge from injury, where such [owner] was present and such danger was reasonably apparent to him." *The Daly No. 40*, 76 F. Supp. 700, 703 (E.D.N.Y. 1947); *see Ingram Barge Co. v. W. Lake Quarry & Material Co.*, 357 F. Supp. 624 (E.D. Mo. 1973); *B.W. King, Inc. v. Consol. Iron & Metal Co.*, 310 F. Supp. 471 (S.D.N.Y. 1970); *O'Donnell Transp. Co. v. Tidewater Iron & Steel Co.*, 90 F. Supp. 953 (D.N.J. 1950). Each of these cases, however, was decided after a bench trial and invokes the duty in support of a finding of fact, not judgment as a matter of law. *See Ingraham Barge Co.*, 357 F. Supp. at 627-28 (finding no negligence or

5

proximate cause); *B.W. King, Inc.*, 310 F. Supp. at 475 (same); *O'Donnell Transp. Co.*, 90 F. Supp. at 955 (reducing damages).

Moreover, the cases cited by EMR involved claims of negligence, not breach of contract. There are similar duties in contract cases, such as the injured party's "obligation to make reasonable efforts to mitigate its damages." *APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010). In addition, the agreement here was essentially an agreement to indemnify Thornton for damage to its barges; "[u]nder federal maritime law, an indemnity clause will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms." *MSC Mediterranean Shipping Co. S.A. v. Airlift Marine Servs. PVT Ltd.*, 579 F. Supp. 3d 484, 498 (S.D.N.Y. 2022) (internal quotation marks omitted). Nevertheless, those principles of contract law present the same questions of fact as to whether and to what extent the damage was caused by Thornton's own negligence or failure to mitigate. *See APL Co. PTE*, 592 F.3d at 111 (noting that failure to mitigate "may cause a court *to lessen* the recovery" (emphasis added)).

**4.      Breach of Contract: Bareboat Charter**

EMR extensively argues that its hire of Thornton's barges was not a "bareboat charter." That argument appears to be correct inasmuch as such an

6

arrangement requires that "the owner of the vessel must completely and exclusively relinquish possession, command, and navigation thereof to the [hiree]." *Guzman v. Pichirilo*, 369 U.S. 698, 699 (1962). Thornton, by contrast, retained possession of the barges, which were towed from place to place by one of its employees.

EMR's argument is irrelevant, however. Thornton predicates EMR's liability on its agreement to pay for damages to the barges beyond ordinary wear and tear. Whatever obligations maritime law imposed on EMR, nothing prevented the parties from altering or supplementing those obligations by contract. *See E. River S.S. Corp. v. Transam. Delaval, Inc.*, 476 U.S. 858, 874 (1986) (applying ordinary principles of contract law to maritime contract).

**5.     Breach of Contract: Constructive Total Loss**

Finally, EMR argues that it is not liable for any damages in excess of the barges' fair market value because the barges were a "constructive total loss." The concept that a contractual obligation to repair does not extend beyond the fair market value of the repaired vessel is well-established in maritime law. *See Asphalt Int'l, Inc. v. Enterprise Shipping Corp.*, 514 F. Supp. 1111, 1113 (S.D.N.Y. 1981) ("[W]hen a ship is a constructive total loss, one would not expect there to be a persisting duty to repair, unless the charter contained an explicit

7

agreement to the contrary."). Here, however, Thornton and EMR dispute the barges' fair market value, setting up a textbook question of fact. Moreover, Thornton's claim for lost profits is not subject to the same limitation as its claim for repair costs and, as noted above, presents an additional question of fact.

**Conclusion**

For the foregoing reasons, EMR's motion for summary judgment is granted in part and denied in part. Thornton's claims for fraud in the inducement and negligence/gross negligence are dismissed. Its claim for breach of contract will proceed to a bench trial to resolve—in addition to any other pertinent questions of fact—whether Thornton bears any responsibility for the damage to the barges, whether the cost of repairs exceeded the barges' fair market value, and whether lost profits were reasonably foreseeable and contemplated by the parties at the time of their agreement.

**SO ORDERED.**

  /S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
May 23, 2023

8